## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**CRAIG ANDERSON,**                     )
                                        )
        **Petitioner,**       )
                                        )         **Civil Action No.**
     **v.**                  )         **21-11584-FDS**
                                        )
**ANTONE MONIZ,**                       )
                                        )
        **Respondent.**       )
_____)


## MEMORANDUM AND ORDER ON
## <u>RESPONDENT'S MOTION TO DISMISS</u>

**SAYLOR, C.J.**

      This is a petition for a writ of habeas corpus.  Petitioner Craig Anderson is a detainee of

Immigration and Customs Enforcement who is currently located at the Plymouth County

Correctional Facility.  Respondent Antone Moniz is the current superintendent of that facility.

      Anderson is a Jamaican national who entered the United States in 1996.  He has multiple

criminal convictions, including a federal conviction for being a felon in possession of a firearm

and ammunition.  After his release from federal criminal custody, ICE arrested him on

October 1, 2019, and issued a Final Administrative Removal Order pursuant to 8 U.S.C.

§ 1228(b).  In connection with his removal proceedings, Anderson has filed multiple petitions

for review and motions for a stay of removal with the Third Circuit.[1]  His latest petition for

review is apparently still pending.

      Anderson, proceeding *pro se*, has petitioned for a writ of habeas corpus pursuant to 28

---

[1] The removal proceedings against Anderson originated in Pennsylvania.

U.S.C. § 2241, seeking an order of release and a stay of his removal.  Respondent has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  For the following reasons, the petition will be denied and the motion to dismiss will be granted.

## I.      Background

### A.      Factual Background

The facts are drawn from the petition for habeas corpus.

Craig Anderson is a citizen of Jamaica who originally entered the United States on June 6, 1996, as a Non-Immigrant B-2 Temporary Visitor.  (Pet. at 5-6).[2]  He overstayed his visa and never left the United States.  (*Id.* at 6).  Anderson's father, a naturalized U.S. citizen, apparently filed a I-130 Petition for Alien Relative on Anderson's behalf, which was approved on July 11, 2002.  (*Id.*).  Anderson did not thereafter file an application to adjust his status to a lawful permanent resident.  (*Id.*).  He has three children who are U.S. citizens.  (*Id.*).

Anderson has multiple arrests and criminal convictions, mostly involving second-degree assault.  (Pet.'s Opp. at 2-3).  In January 2014, he was indicted on federal charges in the District of Maryland.  (*Id.* at 3).  He later pleaded guilty to the charge of being a felon in possession of a firearm and ammunition.  (*Id.*).  In January 2015, he received a sentence of 84 months' imprisonment.  (*Id.*).  It was that conviction, which ICE determined to be an aggravated felony, that led ICE to take him into custody after his release from prison.

### B.      Procedural Background

#### 1.      Immigration Proceedings

On October 1, 2019, Anderson was taken into ICE custody and subsequently detained at

---

[2] The petition's paragraphs are not numbered, and therefore the Court will refer to the page numbers displayed on ECF for clarity.

the York County Prison in Pennsylvania.  (Pet. at 6).[3]  ICE issued a Final Administrative

Removal Order shortly thereafter.  (*Id.* at 6-7).

On December 16, 2019, Anderson filed a petition for review and a motion for a stay of

removal with the Third Circuit.  (Marfissi Dec. ¶ 13).  The Third Circuit denied his motion for a

stay of removal on March 30, 2020.  (*Id.* ¶ 14).  It subsequently denied a second motion to stay

on October 23, 2020, as well as a motion to reconsider its first denial on December 18, 2020.

(*Id.*).  On April 1, 2021, the Third Circuit dismissed his case for failure to file a brief and

appendix.  (*Id.* ¶ 15).

ICE scheduled Anderson for removal in May 2020, but prior to boarding the flight, he

expressed a fear of returning to Jamaica.  (Pet. at 7).  An asylum officer thereafter determined he

had expressed a reasonable fear of persecution or torture, and ICE referred his case to the

immigration court to consider his request for withholding of removal and protection under the

Convention Against Torture.  (Pet. at 7; Marfissi Dec. ¶¶ 16-17).

On February 5, 2021, Immigration Judge Jennifer May held a hearing on Anderson's

claims.  (Pet. at 7).  She stated on the record that the government should not have placed

Anderson in withholding-only proceedings and instead should have placed him in ordinary INA

§ 240 proceedings.  (Pet. at 7; Pet. Ex. 1).  Anderson alleges that a motion to change his

proceedings from withholding-only to removal was later filed but ultimately denied.  (Pet. at 7;

Pet. Ex. 6).  It is unclear from the record when that motion was filed and what happened

thereafter.

On March 19, 2021, another immigration judge conducted a hearing on Anderson's

---

[3] At some point thereafter, he was transferred to the Plymouth County Correctional Facility in
Massachusetts.

claims for withholding of removal and protection under CAT.  (Pet. at 7).  The IJ determined that

he was not eligible for withholding of removal due to his aggravated felony conviction and that

he had not met his burden of proof required by CAT.  (Pet. at 7; Marfissi Dec. ¶ 18).  Anderson

appealed the IJ's decision to the Board of Immigration Appeals, which affirmed the IJ on August

31, 2021.  (Pet. at 7).

On September 16, 2021, Anderson filed a second petition for review and a motion to stay

removal with the Third Circuit.  (Pet. at 7-8).  His petition for review is apparently still pending.

(Pet. at 8).

**2.**     **Habeas Proceedings**

On October 7, 2021, Anderson, proceeding *pro se*, filed the present petition for a writ of

habeas corpus.  He named Attorney General Merrick Garland and Todd Lyons, director of ICE's

Boston field office, as respondents.  On October 21, 2021, the Court ordered that Antone Moniz,

the Superintendent of Plymouth County Correctional Facility, should be the sole respondent.

Moniz was ordered to answer or otherwise respond to the petition by November 12, 2021.  On

November 10, 2021, Moniz moved to dismiss for lack of jurisdiction under Fed. R. Civ. P.

12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).  On November 29, 2021,

Anderson filed an opposition to the motion to dismiss.

**II.**     **Standard of Review**

On a motion to dismiss for lack of subject-matter jurisdiction made pursuant to Fed. R.

Civ. P. 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of

proving its existence."  *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting

*Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).  If the party seeking to invoke federal

jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted.

*Id.*  The court must "credit the plaintiff's well-pled factual allegations and draw all reasonable

4

inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). However, it may also "consider whatever evidence has been submitted, such as the depositions and exhibits submitted." *Id.* (citation omitted). "The attachment of exhibits to a Rule 12(b)(1) motion does not convert it to a Rule 56 motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

When, as here, a motion to dismiss is filed against a *pro se* litigant, any document filed by the *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))

5

(internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed

so as to do justice.").  However, while *pro se* complaints "are accorded 'an extra degree of

solicitude' . . . even a *pro se* plaintiff is required to 'set forth factual allegations, either direct or

inferential, respecting each material element necessary to sustain recovery under some actionable

legal theory.'"  *Wright v. Town of Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009)

(quoting *Adams v. Stephenson*, 116 F.3d 464, at *1 (1st Cir. June 23, 1997) (per curiam)).

## III.    Analysis

Respondent has first moved to dismiss under Fed. R. Civ. P. 12(b)(1), contending that the

Court lacks subject-matter jurisdiction under 8 U.S.C. § 1252.

Judicial review in immigration cases is limited by the Illegal Immigration Reform and

Responsibility Act and the Real ID Act.  *See* 8 U.S.C. § 1252.  By enacting those statutes,

Congress intended to "consolidate and channel review of *all* legal and factual questions that arise

from the removal of an alien into the administrative process."  *See Aguilar v. U.S. Immigr. &

Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007).  The Court must

therefore consider whether § 1252 bars jurisdiction over petitioner's claims.

Petitioner appears to assert two principal claims.  First, he argues that his placement in

withholding-only proceedings, rather than standard § 240 proceedings, violated his procedural

due-process rights, like the petitioners in *Jimenez v. Nielsen*, 334 F. Supp. 3d 370 (D. Mass.

2018).  Second, he argues that he is entitled to a stay of removal and release from detention on

the basis of an ICE interim guidance document.  The Court will consider both claims in turn.

### A.    Withholding-Only Proceedings

First, petitioner alleges that he was improperly placed in withholding-only proceedings,

rather than standard § 240 proceedings.[4]  Based on this, he contends that his procedural due-process rights were violated.[5]  However, there is a substantial question whether the Court has subject-matter jurisdiction to decide petitioner's claim.

### 1.   8 U.S.C. § 1252

Two jurisdictional hurdles in immigration cases are potentially relevant here:  8 U.S.C. § 1252(b)(9) and § 1252(g).

Section 1252(b)(9) provides that judicial review of all questions of law and fact "arising from any action taken or proceeding brought to remove an alien from the United States under [Subchapter II of Title 8] shall be available only in judicial review of a final order."  That provision "strips federal courts of jurisdiction to decide legal and factual questions arising from an alien's removal in any other context, including on a petition for a writ of habeas corpus." *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).  It has been described as a "zipper clause," with a purpose to "consolidate 'judicial review' of immigration proceedings into one action in the

---

[4] Some context to petitioner's claim is helpful.  Petitioner's removal was effectuated under 8 U.S.C. § 1228(b) (INA § 238(b)), which permits ICE to issue Final Administrative Removal Orders to individuals who are not lawful permanent residents and who have been convicted of an aggravated felony.  This is a form of expedited removal.  However, once petitioner expressed a fear of persecution or torture, an asylum officer interviewed him and determined he had expressed a reasonable fear.  ICE then referred petitioner's case to the immigration court for withholding-only proceedings, where the immigration judge considered his claims for withholding of removal and protection under the Convention Against Torture.  Withholding-only proceedings are different from standard removal proceedings under 8 U.S.C. § 1229a (INA § 240), where an immigration judge presides and aliens may seek certain forms of relief, including a discretionary waiver of criminal grounds of inadmissibility under INA § 212(h).

[5] Petitioner cites to *Jimenez* extensively throughout the petition.  For this claim, the Court understands his argument to be that because he was placed in withholding-only proceedings, not § 240 proceedings, his due-process rights were violated in the same "spirit" as the petitioners in *Jimenez*.  (Pet. at 15).  For example, he argues as follows:

> As stated above and as this Court can see, the holding in *Jimenez v. Cronen*, *Jimenez v. Nielson* [sic] where the court held that the procedural due process right of those alien[s] were violated just as the aliens in *Jimenez v. Cronen*, *Jimenez v. Nielson* [sic], petitioner Craig Anderson['s] procedural due process right was violated when he was placed in the "withholding only proceeding" and not 240 proceedings.

(Pet. at 19).

court of appeals." *I.N.S. v. St. Cyr*, 533 U.S. 289, 313 (2001).

"The words 'arising from' [in § 1252(b)(9)] do not lend themselves to precise application . . . [T]hose words are not infinitely elastic . . . . [They] cannot be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien." *Aguilar*, 510 F.3d at 10 (internal citations omitted).  To fall within the ambit of § 1252(b)(9), a claim must have "more than a weak or tenuous connection to a triggering event." *Id.*  Correspondingly, the district courts have jurisdiction over claims that are "independent of, or wholly collateral to, the removal process," *id.* at 11, which include "claims which cannot be raised in removal proceedings and eventually brought to the court of appeals on a petition for review," *Gicharu*, 983 F.3d at 16.  Although the boundaries of § 1252(b)(9) are not completely clear, the Supreme Court recently noted in a plurality opinion that § 1252(b)(9) was not a jurisdictional bar when, among other things, respondents were *not* "challenging any part of the process by which their removability will be determined."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

Second, Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  That provision applies "notwithstanding any other provision of law (statutory or non-statutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title."  The Supreme Court has interpreted that provision somewhat narrowly, reasoning that § 1252(g) *only* applies to claims challenging decisions or actions made in commencing proceedings, adjudicating cases, and executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

8

Section 1252(g) can serve as a jurisdictional bar even when a petitioner contends that his due-process rights were violated.  *See Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) (stating that "Section 1252(g) bars 'any cause or claim' that arises from executing a removal order . . . [and] [i]t applies to constitutional as well as statutory claims") (emphasis omitted); *Reno*, 525 U.S. at 487-92 (holding that § 1252(g) deprived district court of jurisdiction over claims that certain aliens were targeted for deportation in violation of the First Amendment).

Another judge in this Circuit recently held that § 1252(g) barred the exercise of jurisdiction over such claims, noting:

> Viana's claims appear to fall well within the ambit of § 1252(g).  He challenges the manner in which immigration authorities decided to execute his removal order, *arguing that it prevents him from seeking potential avenues for relief from removal.*  His claims are dependent on and grounded in that decision, and thus are reasonably understood to "arise from" that decision.

*Viana v. President of United States*, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018) (emphasis added).

In light of the foregoing, § 1252 precludes the exercise of subject-matter jurisdiction over petitioner's claim that his placement in withholding-only proceedings under § 1228(b), rather than standard removal proceedings under § 1229a, violated his procedural due-process rights. *See Fernandez v. Roden*, 2014 WL 347616, at *5 (D. Mass. Jan. 29, 2014) (holding that court lacked jurisdiction under § 1252 to decide habeas claim for petitioner who received Final Administrative Order of Removal under § 1228(b)).

### 2.      Suspension Clause

Because the Court finds that § 1252 bars the exercise of jurisdiction, it will further consider whether that interpretation violates the Suspension Clause of the United States

Constitution.[6]  The Suspension Clause provides that the "Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.  "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Suspension Clause "unquestionably requires some judicial intervention in deportation cases."  *St. Cyr*, 533 U.S. at 290.  Nevertheless, "Congress has wide latitude in choosing which remedy or remedies are appropriate for the violation of a particular constitutional right . . . [and] possesses the power to regulate the jurisdiction of the lower federal courts."  *Aguilar*, 510 F.3d at 17.  "[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."  *Swain v. Pressley*, 430 U.S. 372, 381 (1977).  For example, a petition for review to the Court of Appeals is "designed to provide an adequate and effective alternative to habeas corpus."  *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1072 (2020) (citations and internal quotations omitted).  However, the Suspension Clause is violated where habeas relief is foreclosed and alternative remedies are inadequate substitutes. *Boumediene v. Bush*, 553 U.S. 723, 771-72 (2008).[7]

By its terms, § 1252 forecloses habeas relief here.  The question, therefore, is whether the alternative remedies provided to review petitioner's claims are adequate substitutes for the

---

[6] Petitioner raised the Suspension Clause in his opposition, but the government has not briefed the issue. Nonetheless, the Court considers the issue here.

[7] *Boumediene* established a two-part framework to analyze potential violations of the Suspension Clause. First, the court must determine whether a habeas petitioner is precluded from invoking the Suspension Clause because of some attribute of the petitioner or the circumstances surrounding his detention or removal.  *Boumediene*, 553 U.S. at 739.  Second, the court must consider whether the alternative remedies available are inadequate substitutes for habeas relief.  *Id.* at 771.

normal habeas corpus process.  Even assuming petitioner was incorrectly placed in expedited removal proceedings under § 1228(b), the Court of Appeals has the authority to review that determination with a petition for final review.  In fact, other circuits have done just that.  For example, in *Walker v. Attorney General U.S.*, the government determined that Walker's marijuana conviction was an aggravated felony, triggering expedited removal proceedings under § 1228(b).  625 F. App'x. 87, 89-91 (3d Cir. 2015).  Like Anderson, he sought withholding of removal and protection under the Convention Against Torture.  *Id.*  On a petition for final review, the Third Circuit considered whether his marijuana conviction was an aggravated felony—thereby determining whether he was properly placed in withholding-only proceedings. *Id.*  The Third Circuit ultimately concluded that he had not been convicted of an aggravated felony and therefore vacated his order of removal.  *Id.*; *see also G.S. v. Holder*, 373 F. App'x 836, 846 (10th Cir. 2010) (denying petition for review after resolving merits of whether it was improper to place petitioner in expedited removal proceedings under 8 U.S.C. § 1228(b) because he was not an alien described in that statute).

In summary, § 1252 precludes the exercise of subject-matter jurisdiction over this claim, and the statute as applied here does not violate the Suspension Clause of the United States Constitution.

### B.  <u>Interim Guidance</u>

Petitioner further alleges that he is entitled to a stay of removal and release from detention based on an internal ICE document titled "Interim Guidance to OPLA Attorneys Regarding Civil Immigration Enforcement and Removal Policies and Priorities."  The Interim Guidance was released in May of 2021, and was apparently written by John D. Trasviña, the Principal Legal Advisor for ICE.  Based on the provisions of that document, it appears that petitioner challenges the government's exercise of prosecutorial discretion, as well as its failure

to dismiss his proceedings.  (*See* Pet. at 10, 12).

Petitioner cites certain "aggravating and mitigating factors" that the government should consider in determining whether to exercise prosecutorial discretion.  He then applies those factors to himself, arguing that he "fit[s] the criteria of the mitigating factor[s]" from the guidance document because, among other things, he has resided in the U.S. since 1996; he has three children who are U.S. citizens; and he will soon be the primary caregiver of his father, who is also a U.S. citizen.  (Pet. at 13).  He also addresses the lack of aggravating factors, contending that he has served his sentence without any infractions and utilized prison programming.  (Pet. at 14-15).

Petitioner also cites to the Interim Guidance's section on "Dismissal of Proceedings," stating that the government should consider dismissal "when a noncitizen has a viable avenue available to regularize their immigration status outside of removal proceedings."  (Pet. at 12). This could include cases where "the noncitizen is the beneficiary of an approved form I-130 Petition for Alien Relative, and appears prima facie eligible for either adjustment of status under INA section 245 or an immigrant visa through consular processing abroad, including in conjunction with a provisional waiver of unlawful presence under 8 C.F.R. § 212.7(e)."  (*Id.*).

This claim could probably be dismissed for lack of subject-matter jurisdiction pursuant to § 1252(g).  *Reno*, 525 U.S. at 485 n.9 (stating that "Section 1252(g) was directed against a particular evil:  attempts to impose judicial constraints upon prosecutorial discretion.").  At least one court, however, has concluded that § 1252(g) may not apply to that stage of a proceeding. *See Gondal v. U.S. Dep't of Homeland Sec*., 343 F. Supp. 3d 83, 92 (E.D.N.Y. 2018) (stating that § 1252(g) "does not deprive this Court of jurisdiction to hear and adjudicate procedural due process claims challenging USCIS procedure prior to its discretionary decision").

In any event, respondent has also moved to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Candra*, 361 F. Supp. 3d at 158-59 (dismissing habeas claim on 12(b)(6) grounds, stating that "[t]he First Circuit has authorized courts to bypass complex questions concerning statutory jurisdiction in the immigration context where 'precedent clearly adumbrates the results on the merits'") (quoting *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 144 (1st Cir. 2007)).

To satisfy the standard of Rule 12(b)(6), the petition must state a claim that is plausible on its face.  Even though petitioner is proceeding *pro se*, the petition must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Wright*, 2009 WL 415506, at *2.

The petition does not cite any law to support the claim that an internal guidance document, having no force of law, can create rights that are enforceable by an immigration detainee.  In *Jimenez*, the court concluded that the petition stated a plausible due-process claim where "the regulations create[d] an entitlement to receive a decision concerning a provisional waiver."  334 F. Supp. 3d at 389.[8]  Here, however, petitioner cites to a non-binding internal document, not a regulation.  The Interim Guidance itself states that it is "intended solely to provide internal direction to OPLA attorneys and staff regarding the implementation of Executive Orders and DHS guidance" and is not intended to "create or confer any right or benefit, substantive or procedural," in removal proceedings or other litigation.  (Pet. Ex. 2).

---

[8] It is somewhat unclear whether petitioner invokes *Jimenez* directly—that is, by arguing that ICE is wrongfully attempting to remove him before he can receive a decision on an application for provisional waiver.  334 F. Supp. 3d at 386.  The petition's multiple references to "the spirit" of *Jimenez* would seem to undermine that proposition.  Nevertheless, the petition copies large portions of the *Jimenez* opinion, including one that states "ICE may only remove an alien who is pursuing a provisional waiver after considering that fact and the policy reasons for the provisional waiver regulations."  (Pet. at 16); *see also Jimenez*, 334 F. Supp. 3d at 386.  Even if the Court were to construe this as a separate claim, it would likely fail on Fed. R. Civ. P. 12(b)(6) grounds.  The petition does not provide sufficient factual allegations to support such a claim, and Anderson is not part of the *Jimenez* class because he does not have a U.S. citizen spouse.  *Id.* at 381.  The petition also does not allege that he has filed (or could file) a Form I-212, Permission to Reapply for Admission to the United States After Deportation or Removal.  *See id.* at 378; 8 C.F.R. § 212.7(e); 8 C.F.R. § 212.2(j).

While the agency's characterization is not necessarily dispositive, an internal document providing guidance for the exercise of prosecutorial discretion rarely generates any form of substantive right.  *See Gondal*, 343 F. Supp. 3d at 93 (finding no liberty or property interest where DACA memo established helpful criteria but "decision to grant or deny deferral [was] entirely a matter of agency discretion"); *El v. Faust*, 2014 WL 5802065, at *1-2 (D.D.C. Nov. 10, 2014) (denying petition for writ of habeas corpus where trial manual merely "provid[ed] guidance to practicing attorneys" and was not "controlling authority").

Moreover, "a complaint fails to state a claim if the court cannot grant the remedy the plaintiff seeks to redress the violation of his rights." *Candra*, 361 F. Supp. 3d at 159 (quoting *Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 12-13 (1st Cir. 1994)).  Here, the Court cannot grant petitioner a stay of removal because it lacks jurisdiction under § 1252.  *See Martin v. U.S. Immigr. & Customs Enf't*, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) (holding that court "lacks authority to issue a stay of a final order of removal"); *Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006) (stating that "[o]ne thing the REAL ID Act certainly did do, however, was emphatically to declare that this Court was not in any way to impede orders of removal").

Accordingly, the Court will grant the motion to dismiss.

## IV.    Conclusion

For the foregoing reasons, respondent's motion to dismiss is GRANTED, and the petition for writ of habeas corpus is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: February 7, 2022                    Chief Judge, United States District Court

14